UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re

SHELLY JONES and WARREN GREGORY JONES,

                       Debtors.
-------------------------------------------------------------x

SHELLY JONES and WARREN GREGORY JONES,

                       Appellants,          **OPINION & ORDER**

   – against –                                                                         No. 23-CV-4828 (CS)

PENNYMAC LOAN SERVICES, LLC,

                       Appellee.[1]

-------------------------------------------------------------x

Appearances:

Shelly Jones
Warren Gregory Jones
Poughkeepsie, New York
*Pro Se Appellants*

Gregg P. Tabakin
Fein, Such, Kahn & Shepard, P.C.
Parsippany, New Jersey
*Counsel for Appellee PennyMac Loan Services, LLC*

---

[1] The Clerk of Court is respectfully directed to correct the docket to reflect PennyMac Loan Services, LLC as Appellee.

Seibel, J.

Before the Court is the appeal of Debtors/Appellants Shelly Jones and Warren Gregory Jones ("Debtors") from an April 26, 2023 Order, (ECF No. 1 at 6-7 (the "April 26 Order")),[2] entered by Judge Cecelia G. Morris of the United States Bankruptcy Court for the Southern District of New York, in the Chapter 13 bankruptcy proceeding captioned *In re Jones*, No. 23-BK-35048 (Bankr. S.D.N.Y.). The April 26 Order, upon the motion of Appellee PennyMac Loan Services, LLC ("PennyMac"), vacated the automatic stay imposed by 11 U.S.C. § 362(a) as to PennyMac's interest in the Debtors' property at 32 North Clover Street, Poughkeepsie, NY 12601 ("the Property").[3]

For the following reasons, the Bankruptcy Court's Order is affirmed.

I.   **BACKGROUND**

On January 20, 2023, Debtors filed a voluntary Chapter 13 bankruptcy petition. (Bankr. Dkt. No. 1.) In the petition, the Debtors valued their assets at $262,484.04 and indicated that they owed $0 to secured creditors and $248,500.19 to unsecured creditors. (*Id.* at 9.) The Debtors listed PennyMac as a creditor having a priority unsecured claim against them for $222,315. (*Id.* at 23.) On February 2, 2023, the Debtors filed a Chapter 13 plan (the "Plan") that

---

[2] All page numbers cited herein refer to the page numbers generated by the District Court's and Bankruptcy Court's Electronic Case Filing System. Citations to "Bankr. Dkt." refer to entries on the Bankruptcy Court's docket, No. 23-BK-35048. Citations to "ECF No." refer to entries on the District Court's docket, No 23-CV-4828.

[3] Appellants' notice of appeal states that they are appealing a March 28, 2023 order of Judge Morris. (ECF No. 1.) It attaches, however, the April 26 Order, (*id.* at 6-7), and seeks "a reprieve from the order to lift the automatic stay," (*id.* at 4). Further, there is no March 28, 2023 order on the Bankruptcy Court docket. It thus appears that the reference to a March 28 order is a mistake and that Appellants intend to appeal the April 26 Order.

provided for payments to the Trustee of $250 a month for 60 months from February 20, 2023 to February 28, 2028.  (Bankr. Dkt. No. 15 at 2.)

On February 14, 2023, PennyMac objected to confirmation of the Plan, asserting that it was a secured creditor holding a mortgage on the Property; that, at the time of the bankruptcy filing, the loan was in default with total arrears of about $87,089.93; and that the Plan did not provide for the payment of arrears or post-petition payments to PennyMac and therefore could not be confirmed.  (Bankr. Dkt. No. 16.)  On March 28, 2023, PennyMac filed a motion pursuant to 11 U.S.C. §§ 362(d)(1), (2) for relief from the automatic stay so that it could pursue foreclosure of the mortgage on the Property in state court.  (Bankr. Dkt. Nos. 18, 18-1.)  The Debtors opposed PennyMac's motion on April 21, 2023, and filed a "supplemental opposition" on April 24, 2023.  (Bankr. Dkt. Nos. 27, 28).[4]

The Bankruptcy Court held a hearing on April 25, 2023.  (*See* ECF No. 17-1 ("Tr."); Bankr. Dkt. Minute Entry dated Apr. 25, 2023.)  At the hearing, in response to the allegation that the Debtors had not made the required post-petition mortgage payments, the Debtors did not dispute that fact, but argued that they were still gathering paperwork, that they had complied with the guidelines they had received, that they were working on plan confirmation, and that they disputed that PennyMac was a secured creditor.  (Tr. at 4:23-6:23.)  The Court explained that because the Debtors had neither made the required post-petition payments or obtained relief from that requirement, she was lifting the automatic stay to allow the state court proceedings to continue, indicating that the Debtors could pursue their dispute about PennyMac's status as a

---

[4] The Bankruptcy Court indicated in the April 26 Order that there was no opposition to PennyMac's motion.  *See* April 26 Order.  This appears to be an error, as the Bankruptcy Court acknowledged the Debtors' opposition filings in its subsequent dismissal order, (*see* Bankr. Dkt. No. 39 at 2), and in its order denying Debtors' motion for a stay pending appeal, (*see* Bankr. Dkt. No. 46 at 2).

secured creditor in that court. (*Id.* at 5:23-7:6.) The next day, the Bankruptcy Court entered a written order granting PennyMac's motion and vacating the automatic stay. *See* April 26 Order.[5]

The record reflects that on May 4, 2015, Shelly Jones executed a note promising to pay $165,487 plus interest to lender Plaza Home Mortgage Inc., in return for a loan. (ECF No. 12-1 (the "Note").)[6] The Note was secured by a mortgage on the Property that was recorded in the Dutchess County Clerk's Office on May 19, 2015. (ECF No. 12-2.) On April 17, 2019, Plaza Home Mortgage Inc. assigned the mortgage to PennyMac Corp., and PennyMac Corp. assigned it to PennyMac, which assignments were recorded in the Dutchess County Clerk's Office on May 6, 2019. (ECF No. 12-3.)[7] PennyMac is the current holder of the Note as well as the mortgage servicer, (ECF No. 12-4 ¶¶ 4,7), and was prevented from proceeding with foreclosure

---

[5] On May 24, 2023, upon the motion of the Bankruptcy Trustee, (*see* Bankr. Dkt. No. 30), the Bankruptcy Court dismissed the Debtors' case pursuant to 11 U.S.C. § 1307(c)(1) based on the Debtors' failure to comply with various sections of the Bankruptcy Code, including failing to amend the plan to include all secured and priority creditors. (Bankr. Dkt. No. 39).

[6] The Debtors submit in their reply brief that they "earlier regarded" the Note "as a fraudulent note in a Bankruptcy court due to false and misleading information," (ECF No. 13 at 4), but they provide no support for the assertion that the note is fraudulent.

[7] The Debtors argue that the assignment of the mortgage to PennyMac through the Mortgage Electronic Registration System ("MERS") was not lawful, (Appellants' Br. at 6), but they provide no legal support for that argument. Courts have considered whether MERS itself had standing to foreclose on or assign a note where it was not the note holder, *see Onewest Bank, N.A. v. Guerrero*, No. 14-CV-3754, 2016 WL 3453457, at *4 n.5 (S.D.N.Y. June 17, 2016) ("[T]hrough that assignment, Plaintiff only stepped into the shoes of MERS, as nominee, and not the Note holder. Accordingly, it does not appear that the July 2008 assignment by MERS conferred standing to foreclose on the Note on Plaintiff."); *Bank of New York v. Silverberg*, 926 N.Y.S.2d 532, 539 (2011) ("In sum, because MERS was never the lawful holder or assignee of the notes described and identified in the consolidation agreement, the corrected assignment of mortgage is a nullity, and MERS was without authority to assign the power to foreclose to the plaintiff."), but these cases are irrelevant here because the evidence clearly establishes the assignments of the mortgage from Plaza Home Mortgage Inc. to PennyMac Corp. to PennyMac, (ECF No. 12-3), and PennyMac does not purport that MERS was ever the assignee or holder of the note. (Unless otherwise noted, case quotations omit all internal quotation marks, citations, alterations, and footnotes.)

because of the automatic stay arising from the Debtors' bankruptcy filing. (*Id.* ¶¶ 8-9.) The mortgage is in default because it was due on December 1, 2018, and the Debtors – who filed their bankruptcy petition on January 20, 2023, (Bankr. Dkt. No. 1) – failed to pay monthly installments starting February 1, 2023. (Bankr. Dkt. No. 18-1. ¶ 10.) The total amount due on the note as of March 8, 2023 was $228,156.04 plus interest, (*id.* ¶ 11), and the Debtors' petition indicated that the fair market value of the Property at the time they filed the petition was $222,315.04, (Bankr. Dkt. No. 1 at 11).

## II.    STANDARD OF REVIEW

This Court has jurisdiction pursuant to 28 U.S.C. § 158(a)(1) to hear appeals from final judgments, orders, and decrees of a bankruptcy court. "This Court may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." *In re Bernard L. Madoff Inv. Sec., LLC*, No. 15-CV-1151, 2016 WL 183492, at *8 (S.D.N.Y. Jan. 14, 2016), *aff'd sub nom. Matter of Bernard L. Madoff Inv. Sec., LLC*, 697 F. App'x 708 (2d Cir. 2017) (summary order).

"A district court reviews a bankruptcy court's conclusions of law *de novo*, its discretionary decisions for abuse of discretion, and its findings of fact for clear error." *In re Depietto*, No. 20-CV-8043, 2021 WL 3287416, at *4 (S.D.N.Y. Aug. 2, 2021). "[A]djudication of automatic stay relief is reviewed for abuse of discretion." *In re Regan*, No. 21-CV-1231, 2022 WL 16744175, at *7 (N.D.N.Y. Nov. 7, 2022). This means that "the [C]ourt does not consider whether it would have made the same decision, but merely whether the Bankruptcy Court's decision was reasonable." *Schneorson v. Schneorson*, No. 22-CV-2434, 2023 WL 4490392, at *4 (E.D.N.Y. July 12, 2023). "A bankruptcy court exceeds its allowable discretion where its decision (1) rests on an error of law (such as application of the wrong legal principle) or a clearly

5

erroneous factual finding, or (2) cannot be located within the range of permissible decisions, even if it is not necessarily the product of a legal error or a clearly erroneous factual finding." *Miles v. Chase Bank*, No. 20-CV-4748, 2022 WL 842073, at *1 (E.D.N.Y. Jan. 24, 2022). "In reviewing the bankruptcy court's determinations, this Court may rely upon any ground supported by the record – it need not rely solely upon those relied upon by the Bankruptcy Court." *Amelio v. Piazza*, No. 19-CV-5944, 2020 WL 5535241, at *3 (S.D.N.Y. Sept. 15, 2020).

The Debtors-Appellants appeal *pro se*. Accordingly, the Court is required to construe their pleadings "liberally to raise the strongest arguments that they suggest." *Amelio*, 2020 WL 5535241, at *3.

## III.   DISCUSSION

The Debtors argue on appeal that the Bankruptcy Court erred in lifting the automatic stay because PennyMac was listed as a non-priority, unsecured debtor and does not hold claims to the Property. (ECF No. 9 ("Appellants' Br.") at 6-8.) PennyMac argues that it had proper standing to apply to lift the stay because it is the current holder of the note and mortgage and the current loan servicer, (*see* ECF No. 12 ("Appellee's Br." at 8-13), the Debtors' failure to make post-petition mortgage payments constitutes cause for lifting the automatic stay, (*see id.* at 13-14), the Debtors have no equity in the property, which also constitutes cause for lifting the automatic stay, (*see id.* at 14-15), and otherwise the Debtors' arguments are meritless, (*see id.* at 16).

The automatic stay and the provisions that allow for relief from the automatic stay are codified in section 362 of the Bankruptcy Code. *See* 11 U.S.C. § 362. "Pursuant to 11 U.S.C. § 362(a), the filing of a bankruptcy petition operates as an automatic stay to give a debtor a short respite from creditors' demands, during which a debtor will have the opportunity to develop and implement plans to right his financial affairs." *In re Bogdanovich*, 292 F.3d 104, 110 (2d Cir.

6

2002). Sections 362(d)(1) and (d)(2) provide two avenues for relief from an automatic stay. *See Schneorson*, 2023 WL 4490392, at *3. Here, the Bankruptcy Court vacated the automatic stay pursuant to both sections 362(d)(1) and (d)(2), which read:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay–
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest; [or]
>
> (2) with respect to a stay of an act against property under subsection (a) of this section, if–
> (A) the debtor does not have an equity in such property; and
> (B) such property is not necessary to an effective reorganization[.]

11 U.S.C. §§ 362(d)(1), (2); *see* April 26 Order. The Court first considers whether PennyMac is a party in interest, and then determines whether the court abused its discretion in lifting the automatic stay under sections 362(d)(1) and (d)(2).

### A. Party in Interest

"The evidence necessary to establish standing as a party in interest to seek stay relief to commence or continue a foreclosure action should include a demonstration that the movant has the right under applicable state law to enforce the mortgage." *Selig v. Druckman Law Grp. PLLC*, No. 17-CV-4510, 2018 WL 3973013, at *4 (E.D.N.Y. Aug. 20, 2018). "Under New York law, a plaintiff establishes its standing in a mortgage foreclosure action by demonstrating that, when the action was commenced, it was either the holder or assignee of the underlying note." *Id.* "Notably, either a written assignment of the underlying note or the physical delivery of the note prior to the commencement of the foreclosure action is sufficient to transfer the obligation, and the mortgage passes with the debt as an inseparable incident." *Id.* When determining whether a movant is a party in interest, "[c]ourts . . . have required only that where the movant claims rights

as a secured creditor by virtue of an assignment of rights to a promissory note secured by a lien against real property, it provide satisfactory proof of its status as the owner or holder of the note at issue." *Osuji v. Deutsche Bank, N.A.*, 589 B.R. 502, 509 (E.D.N.Y. 2018). Moreover, "[i]t is settled that, as a general rule, mortgage servicers . . . have standing to seek stay relief." *In re Lewis*, No. 11-13987, 2017 WL 1839165, at *2 (Bankr. S.D.N.Y. May 5, 2017); *see In re Conde-Dedonato*, 391 B.R. 247, 250 (Bankr. E.D.N.Y. 2008) ("A servicer of a mortgage is clearly a creditor and has standing to file a proof of claim against a debtor pursuant to its duties as a servicer.").

Here, the Debtors argue that PennyMac does not have standing to enforce the note. (Appellants' Br. at 6-8.) The Court disagrees because PennyMac has provided adequate proof that it holds the Note, has possession of it, and is the record assignee of the mortgage. *See* ECF Nos. 12-1, 12-2, 12-3, 12-4; *see also Osuji*, 589 B.R. at 509 (appellee had standing to seek stay relief because it provided proof that it was record assignee of mortgage). Furthermore, PennyMac has shown that it is the servicer of the loan, (ECF No. 12-4 ¶ 7), which separately gives it standing to seek stay relief. *See In re Idicula*, 484 B.R. 284, 285 n.1 (Bankr. S.D.N.Y. 2013) ("[I]t is well-established that a mortgage servicer has standing to seek relief from the automatic stay, presuming, however, that the servicer is acting on behalf of a lender that has standing to seek stay relief."); *In re Modikhan*, No. 1-19-46591, 2021 WL 5312396, at *16 (Bankr. E.D.N.Y. Nov. 15, 2021) ("Evidence that a servicer is authorized to act on behalf of a creditor includes evidence of physical possession of the note by the servicer.").

Thus, PennyMac is a party in interest.

### B. Section 362(d)(1)

"In reviewing a bankruptcy court's grant of relief from an automatic stay under section 362(d)(1), the district court considers whether cause exists." *Boissard v. Specialized Loan Servicing, LLC*, No. 19-CV-4280, 2020 WL 9816005, at *4 (E.D.N.Y. Nov. 24, 2020). "The term 'for cause' is a broad and flexible concept that must be determined on a case-by-case basis." *Id.* "Although 'cause' is not explicitly defined in the statute, section 362(d)(1) provides that 'lack of adequate protection of an interest in property of such party in interest' is grounds for finding cause." *Id.* (quoting 11 U.S.C. § 362(d)(1)). Indeed, "[f]ailure to make mortgage payments is one of the best examples of a lack of adequate protection under Section 362(d)(1) of the Bankruptcy Code" and "[n]onpayment constitutes grounds on its own for granting the motion for relief from the automatic stay." *Buczek v. Nationstar Mortg. LLC*, No. 19-CV-1402, 2021 WL 631281, at *7 (W.D.N.Y. Feb. 17, 2021); *see In re Fennell*, 495 B.R. 232, 239 (Bankr. E.D.N.Y. 2012) (creditor made prima facie showing that cause existed to lift stay because debtor failed to contravene creditor's assertion that debtor was delinquent on mortgage payments).

When requesting relief from the automatic stay for cause, "[t]he movant must make an initial showing of cause, and then the burden shifts to the party opposing the motion to prove that it is entitled to the continued protections of the automatic stay." *In re Great Atl. & Pac. Tea Co., Inc.*, 467 B.R. 44, 55 (S.D.N.Y. 2012), *aff'd sub nom. Grocery Haulers, Inc. v. Great Atl. & Pac. Tea Co.*, 508 F. App'x 63 (2d Cir. 2013). "In addition, to determine whether cause exists to permit litigation against the debtor to continue in another court, the Court considers the non-exclusive list of factors . . . set forth by the Second Circuit in *In re Sonnax Industries, Inc.*"

*Boissard*, 2020 WL 9816005, at *4.[8]  "A reviewing court has wide discretion to apply the *Sonnax* factors as it sees fit based on the facts underlying a given motion." *Id.* at 5; *see In re Bogdanovich*, 292 F.3d 104, 110 (2d Cir. 2002) ("Not every one of [the *Sonnax*] factors will be relevant in every case.  The ultimate determination whether to lift a stay depends upon the facts underlying a given motion.").

Here, PennyMac provided evidence that the mortgage on the Property was in default with a total arrears of about $87,089.93 when the Debtors filed for bankruptcy, that the Debtors failed to make post-petition payments commencing on February 1, 2023, and that the grace period for those post-petition payments has expired.  (ECF No. 12-5 ¶ 4; Bankr. Dkt. 16 ¶ 2(a).)  Debtors did not controvert this evidence.  Their nonpayment is sufficient grounds for granting PennyMac relief from the stay.  *See Boissard*, 2020 WL 9816005, at *5 (collecting cases); *see also In re Taylor*, 151 B.R. 646, 648 (E.D.N.Y. 1993) ("A debtor's failure to make regular mortgage payments as they become due constitutes sufficient cause to lift the automatic stay.").[9]

---

[8] The factors include "(1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms." *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1286 (2d Cir. 1990).

[9] The Debtors assert that they submitted monthly plan payments to the Chapter 13 Trustee commencing on February 20, 2023.  (Appellants' Br. at 4.)  But the Plan – which would have involved payments totaling $15,000 – did not provide for payment of arrears or post-petition payments to PennyMac, (*see* Bankr. Dkt. 16 ¶ 2; Bankr. Dkt. 39 at 4), and Judge Morris did not lift the stay based on the failure to make Plan payments; she lifted it based on the failure to make mortgage payments.

Additionally, the relevant *Sonnax* factors weigh in PennyMac's favor.  Allowing PennyMac to proceed with the foreclosure action would allow resolution of the issues related to the Property and would not interfere with the bankruptcy case, state courts have the expertise to address the foreclosure issues involved in the bankruptcy proceedings, allowing the foreclosure action to proceed would not prejudice other creditors because the Property has no equity, and the balance of harms favors PennyMac given the Debtors' failure to make the mortgage payments.  *See Russo v. Wells Fargo N.A.*, No. 23-CV-2359, 2024 WL 1348523, at *7 (E.D.N.Y. Mar. 29, 2024); *In re Kolnberger*, 603 B.R. 253, 268 (Bankr. E.D.N.Y. 2019); *Boissard*, 2020 WL 9816005, at *6.  Accordingly, the Bankruptcy Court did not abuse its discretion in granting PennyMac's motion to lift the automatic stay pursuant to section 362(d)(1).

### C.  Section 362(d)(2)

"[A]n automatic stay may be lifted under § 362(d)(2) if '(A) the debtor does not have an equity in [the relevant] property; and (B) [the] property is not necessary to an effective reorganization.'"  *In re Mader*, No. CV-19-2048, 2021 WL 1729472, at *6 (E.D.N.Y. Mar. 31, 2021) (quoting 11 U.S.C. § 362(d)(2)).  "The creditor bears the burden to show a lack of equity."  *In re Ehrenfeld*, No. 19-CV-8718, 2020 WL 5758819, at *3 (S.D.N.Y. Sept. 28, 2020).  "Once lack of equity is established, the burden shifts to the debtor to show that the property is necessary for effective reorganization."  *Id.*

"[A] debtor lacks equity in a particular piece of property when the sum total of the claims secured by the property exceed its value."  *Id.* at *4.  Here, PennyMac satisfied its burden of showing that the Property lacked equity by submitting an affidavit from an authorized agent of PennyMac that the total amount due on the mortgage is $228,156.04, but the Property had an assessed fair market value of $222,315.04 as reflected on the Debtors' Schedule A.  (ECF No.

11

12-5 ¶ 7; *see* Bankr. Dkt. No. 1 at 11.)  With respect to effective reorganization, "[t]he Supreme Court has stated that a debtor's burden of proof that the property is necessary to an effective reorganization is 'not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization *that is in prospect*.'"  *In re Kolnberger*, 603 B.R. at 269 (quoting *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 375-76 (1988) (emphasis in original)).  "'[T]his means that there must be a reasonable possibility of a successful reorganization within a reasonable time.'"  *Id.*  (quoting *United Sav. Ass'n of Texas*, 484 U.S. at 375-76).  "An effective reorganization means more than just that the debtor needs the property, since all debtors who resist relief from the automatic stay obviously regard all their assets as indispensable for reorganization purposes."  *In re Frye*, 323 B.R. 396, 401 (Bankr. D. Vt. 2005), *amended*, No. 05-10004, 2005 WL 1915845 (Bankr. D. Vt. May 6, 2005).  "If all the debtor can offer in response to a request for relief from the automatic stay is the hope that sometime in the future some purchaser may appear on the horizon with a sufficiently substantial offer to support a plan of reorganization, it cannot be concluded that an 'effective' reorganization is likely."  *Id.*  Debtors put forth no argument that there would be any sale of or assets gained from the Property, or that any other effective reorganization was in prospect.  Thus, they did not meet their burden of showing that the Property is needed for an effective reorganization, and the Bankruptcy Court did not abuse its discretion in lifting the stay pursuant to section 362(d)(2).

## IV. CONCLUSION

For the foregoing reasons, the Bankruptcy Court's Order is affirmed. The Clerk of Court is respectfully directed to correct the docket as set forth in footnote 1 and close the case.

**SO ORDERED.**

Dated: August 6, 2024
      White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.